Signed and Filed: April 13, 2016

HANNAH L. BLUMENSTIEL
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 14-30726 HLB |
| REGAN CARROLL, | Chapter 7 |
| Debtor. | |
| CHARLES I. JADALLAH, | Adv. Proc. No. 14-3099 HLB |
| Plaintiff, | |
| v. | |
| REGAN CARROLL, | |
| Defendant. | |

## MEMORANDUM DECISION

**I. INTRODUCTION**

This adversary proceeding came before the Court on January 13, 2016 for a bench trial on the complaint of Plaintiff Charles Jadallah against Defendant Regan Carroll.[1] The complaint alleges that Mr. Carroll made certain representations to induce Mr. Jadallah to loan a total of $700,000[2] to the

---

[1] Prior to trial, Mr. Jadallah filed two motions in limine, both of which were denied on the record the day of trial.

[2] The complaint also seeks a finding that $600,000 originally loaned to Redland in 2007 is a nondischargeable debt. At trial, however, Mr. Jadallah's counsel indicated that his client no longer wished to pursue such a finding with regards to the 2007 funds.

Redland Group, Inc. ("Redland"). The complaint further alleges that Redland "is the alter ego of [Mr. Carroll] and that [Mr. Carroll] controlled [Redland] in such a way that any separateness between [Mr. Carroll] and [Redland] ceased, and that the two are one and the same for purposes of this complaint and otherwise." Ultimately, the complaint seeks a determination that Mr. Carroll's alleged liability to Mr. Jadallah is nondischargeable under sections 523(a)(2)(A) and (a)(6)[3] of the Bankruptcy Code.[4]

This memorandum decision constitutes the Court's findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. As explained below, the Court finds that $500,000 of the $700,000 advanced by Mr. Jadallah constitutes a nondischargeable debt under section 523(a)(2)(A).

**II. JURISDICTION**

This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and General Order 24 of the United States District Court for the Northern District of California. Venue is proper under 28 U.S.C. § 1409(a). Moreover, Mr. Carroll has admitted that venue and

---

[3] On October 22, 2014, the Court granted in part Mr. Carroll's motion for judgment on the pleadings, dismissing a claim alleged under section 523(a)(4).

[4] Unless otherwise noted, all statutory citations shall refer to Title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq., and all citations to rules of procedure shall refer to the Federal Rules of Bankruptcy Procedure.

jurisdiction are proper and has impliedly consented to entry of final judgment by this Court by participating in this proceeding through trial. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 569 (9th Cir. 2012), aff'd, Exec. Benefits Ins. Agency v. Arkison, 134 S.Ct. 2165, 2175 (2014).

**III. BACKGROUND**

Mr. Carroll is a general contractor with experience "flipping" houses. In 2007, Mr. Jadallah's accountant, Tim Desmond, an acquaintance of Mr. Carroll, advised Mr. Jadallah that Mr. Carroll was seeking a loan at an attractive interest rate and that he would secure the loan with a first lien against real estate located at 721 San Bruno Avenue, San Francisco, California (the "Property"). This loan was not to be used to renovate the Property, but was instead intended to be a short term loan to help Mr. Carroll finish some other development or renovation projects.

After the two met, Mr. Jadallah agreed to lend Mr. Carroll's company, Redland, $600,000 in the form of a note due in full after 18 months ("Note") and secured by a first deed of trust against the Property. Due to difficulties with these other projects, Redland did not repay the Note as promised, but the parties agreed to permit continuing payments under the original terms of the Note.[5]

---

[5] Per Mr. Jadallah's testimony, the parties agreed to "let it continue under the same terms." There is no documentary evidence of this, nor is there any other relevant testimony.

In 2012, Mr. Carroll sought an additional loan from Mr. Jadallah to complete renovations on the Property (the "Project"). On August 6, 2012, Mr. Carroll submitted detailed plans and a budget to Mr. Jadallah via Mr. Desmond, which confirmed that $704,860 would be sufficient to complete all renovations necessary to obtain an occupancy permit within six months, including a cushion of approximately $60,000 for unexpected contingencies. Mr. Carroll also made certain representations, discussed below, regarding the Project and what would be needed to complete it.

Mr. Jadallah agreed to lend Redland the funds requested. Though he has had remodeling work done on his personal residence and on some investment properties in the past, Mr. Jadallah is not in the business of making construction loans. His role in the renovation of the Property was as a passive investor; he played no part in the construction.

Per the parties' arrangement, Mr. Jadallah advanced funds in separate draws on an as-needed basis, contingent upon Mr. Desmond's review of the Project's expenditures. Mr. Jadallah began advancing these new funds at the beginning of 2013. In total, he made seven disbursements:

```
January 22, 2013 . . . . . . . . . .  $50,000
January 29, 2013 . . . . . . . . . . $150,000
March 7, 2013 . . . . . . . . . . .  $100,000
May 14, 2013 . . . . . . . . . . . . $200,000
May 28, 2013 . . . . . . . . . . . . $100,000
August 9, 2013 . . . . . . . . . . .  $50,000
August 9, 2013 . . . . . . . . . . .  $50,000
```

- 4 -

After Mr. Jadallah agreed to fund the Project, Mr. Carroll made changes to the original plans, including changing the two car garage to a three car garage. Mr. Carroll did not notify Mr. Jadallah of the changes, nor did he obtain Mr. Jadallah's consent before implementing the changes.

Almost immediately after commencement of the Project, Mr. Carroll began to fall behind on payments to contractors. Subcontractor Seosamh O'Briain invoiced Mr. Carroll for excavation work on January 30, 2013, February 13, 2013, February 27, 2013, March 5, 2013, April 3, 2013, and June 5, 2013. Of these, only the January 30 and February 27 invoices, which Mr. Carroll attributes to work under the original Project plan, were paid. In late April, subcontractor Stephen O'Kane invoiced Mr. Carroll for framing work totaling $22,111. He, too, was not paid. Ultimately, Mr. Carroll failed to complete the Project on time or within budget.

Mr. Jadallah first discovered that all was not right in June 2013, when he received a series of emails from Mr. Desmond. Mr. Desmond emailed Mr. Jadallah to inform him that he had discovered that the Project was almost $200,000 over budget and that the Property, to his untrained eye, was far from complete. In an email dated June 20, Mr. Desmond indicated that, a day earlier, Mr. Carroll had informed him for the first time of the changes to the Project and that it could not be completed without additional funding. This exchange prompted the parties to arrange a meeting.

In July 2013, the parties and their attorneys met at the Property. After performing a walkthrough, Mr. Jadallah agreed

Case: 14-03099   Doc# 57   Filed: 04/13/16   Entered: 04/14/16 09:45:30   Page 5 of 19

to advance the remaining $100,000. Even with these additional funds, Mr. Carroll never completed the Project.

Mr. Carroll filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 11, 2014. Mr. Jadallah timely filed his complaint on August 15, 2014.

## IV. DISCUSSION

### a. Alter Ego Liability and Direct Fraud

As the complaint alleged, and as the evidence has shown, Redland was the party legally obligated to repay the funds advanced by Mr. Jadallah. The complaint makes the general allegation that Mr. Carroll and Redland are alter egos and that they are one and the same for purposes of the allegations raised therein. Apart from this general statement, the complaint does not touch on the significance of the alter ego allegation, and it is unclear how Mr. Jadallah would like the doctrine employed in this case.

California's alter ego doctrine provides a procedural mechanism by which an individual can be held jointly liable for the wrongdoing of his or her corporate alter ego. See Mesler v. Bragg Mgmt. Co., 39 Cal. 3d 290, 301 (1985); see also Ahcom, Ltd. v. Smeding, 623 F.3d 1248, 1251 (9th Cir. 2010) ("A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural . . . ."). The conditions under which the corporate form may be disregarded vary according to the facts of each case, but generally, two requirements must be established for alter ego liability to exist: (1) there must be unity of interest and ownership such

that the separate personalities of the corporation and the individual no longer exist, and (2) if the acts are treated as those of the corporation alone, an inequitable result will follow. Automotriz del Golfo de California S. A. de C. v. v. Resnick, 47 Cal. 2d 792, 796 (1957).

If Mr. Jadallah intended to establish that Mr. Carroll should be liable for Redland's debt on an alter ego theory, Mr. Jadallah has failed to establish an entitlement to such relief. Mr. Jadallah presented no evidence that Mr. Carroll and Redland lacked the corporate separation that would permit employment of the doctrine.

This does not, however, let Mr. Carroll off the hook. As the Court noted in its January 28, 2015 Tentative Ruling Denying Motion for Judgment on the Pleadings, where a debtor personally commits acts that constitute fraud related to a corporate debt, the debtor's liability arising from that fraud may still be held nondischargeable under section 523(a) without a finding that the debtor is liable for the underlying debt under an alter ego theory.[6] See Tobin v. Sans Souci Ltd. P'ship. (In re Tobin), 258 B.R. 199 (B.A.P. 9th Cir. 2001); Obara v. AFC Cal, LLC (In re Obara), 2014 WL 2211768 * 6-7 (B.A.P. 9th Cir. May 28, 2014) (unpublished). Accordingly, the Court must determine whether Mr.

---

[6] On October 22, 2014, the Court granted in part Mr. Carroll's motion for judgment on the pleadings. That order required the parties to provide additional briefing on the issue of Mr. Carroll's liability as an alter ego of the Redland Group. On November 13, 2014, Mr. Carroll filed a motion for summary judgment. On February 2, 2015, the Court entered orders denying the remainder of the motion for judgment on the pleadings and denying the motion for summary judgment, finding that Mr. Jadallah could maintain a cause of action under section 523 despite the fact that he made the advances to Redland and that there existed genuine disputes of material fact that necessitated a trial.

Case: 14-03099    Doc# 57    Filed: 04/13/16    Entered: 04/14/16 09:45:30    Page 7 of 19

Carroll's conduct satisfies the elements of nondischargeability under sections 523(a)(2)(A) or 523(a)(6) such that his individual liability for fraud should be excepted from discharge.

**b. Nondischargeability under section 523(a)(2)(A)**

Section 523(a)(2)(A) provides that a "discharge under . . . this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

To prevail on a section 523(a)(2)(A) claim, a creditor must prove five elements by a preponderance of the evidence: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of the statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1246 (9th Cir. 2001). A debtor's failure to disclose material facts is actionable under section 523(a)(2)(A) if he or she was under a duty to disclose and the omission was motivated by an intent to deceive. Id. at 1246 n.4 (citing Citibank (South Dakota), N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1089-90 (9th Cir. 1996)).

At trial, Mr. Jadallah credibly testified to his communications with Mr. Carroll. From this, the Court has

identified several misstatements and omissions that support Mr. Jadallah's section 523(a)(2)(A) claim.

**1. Statements of material fact made prior to the commencement of the Project**

The Court finds that Mr. Jadallah has established by a preponderance of the evidence that Mr. Carroll made the following representations prior to the parties' agreement concerning the second loan:

(1) Mr. Carroll provided Mr. Jadallah plans and a budget describing what work would be performed and representing that the Project would be completed for approximately $700,000;

(2) Mr. Carroll represented that all subcontractors and material suppliers would be paid from the proceeds of the advances; and

(3) Mr. Carroll represented that he would complete the Project within six months.

To prevail, Mr. Jadallah also must show that these representations were false, that Mr. Carroll knew they were false, that Mr. Carroll intended to deceive, that Mr. Jadallah justifiably relied upon the alleged representations, and that the alleged representations caused Mr. Jadallah's damages. The Court finds that Mr. Jadallah did justifiably rely on these representations when agreeing to advance the funds, and that the representations were material. Mr. Jadallah has failed, however, to establish that Mr. Carroll knew of the falsity of the representations at the time they were made. Mr. Jadallah has offered no direct evidence that Mr. Carroll knew the Project

would not be completed in six months or on budget prior to the time he changed the plans, nor has he offered any indirect evidence from which the Court might infer that he knew the statements to be false when made. Accordingly, the first three misrepresentations are not actionable.

### 2. Defendant's failure to disclose material facts during the course of the Project

The Court finds that Mr. Jadallah has established by a preponderance of the evidence that Mr. Carroll failed to disclose the following material facts during the pendency of the Project:

(1) Mr. Carroll failed to disclose that certain subcontractors and suppliers were not paid;

(2) Mr. Carroll failed to disclose that the Project would no longer complete on budget; and

(3) Mr. Carroll failed to disclose major changes to the Project, including changing from a two-car garage to a three-car garage.

For an omission to be actionable under section 523(a)(2)(A), the defendant must be under a duty to disclose the omitted information. Harmon, 250 F.3d at 1246 n.4. Under California law, there are four circumstances in which a duty to disclose material facts may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material facts. LiMandri v. Judkins, 60 Cal. App. 4th 326, 336 (1997). The last

- 10 -

three circumstances do not require a fiduciary relationship, so long as there exists some relationship between the defendant and plaintiff, such as one "between seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement." Id. at 336-37.

Here, the Court finds that Mr. Carroll had a duty to disclose because he: (1) possessed material facts known exclusively to him; and (2) made partial representations and then suppressed material facts. As to the first point, California law recognizes that a duty to disclose "may arise without any confidential relationship where the defendant alone has knowledge of material facts that are not accessible to the plaintiff." 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 796, p. 1151 (citing Sime v. Malouf, 95 Cal. App. 2d 82, 100 (1949); De Spirito v. Andrews, 151 Cal. App. 2d 126, 130 (1957); Lingsch v. Savage, 213 Cal. App. 2d 729, 735 (1963); Massei v. Lettunich 248 Cal. App. 2d 68, 73 (1967); Magpali v. Farmers Group, 48 Cal. App. 4th 471, 482 (1996)). At trial, Mr. Desmond and Mr. Jadallah credibly testified that they did not learn of the changes to the Project until about June 19, 2013. While Mr. Carroll testified that he told Mr. Desmond about the changes prior to June 19, the Court does not find this testimony credible. The Court also finds Mr. Carroll's testimony that Mr. Desmond had been to the property several times unpersuasive because Mr. Jadallah has established that neither he nor Mr. Desmond had the experience necessary to recognize that the construction plans had been changed merely by virtue of visiting the site.

The Court finds that knowledge of the plan changes was solely in the hands of Mr. Carroll, and that Mr. Jadallah did not know and did not have reason to know of the alterations. Similarly, the Court finds that Mr. Carroll alone knew of the facts that subcontractors had not been paid and that the Project was not going to complete on budget. All of these facts were material. Mr. Carroll offered no evidence to contradict the evidence supplied by Mr. Jadallah proving that neither he nor Mr. Desmond had any knowledge of these issues until at least June 19, 2013. Because Mr. Carroll possessed exclusive knowledge of these material facts, he was under a duty to disclose them to Mr. Jadallah.

California law also recognizes a duty to speak where a defendant has provided information that, absent the disclosure of additional facts, would be misleading. 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 799, p. 1156 (citing American Trust Co. v. California Western States Life Ins. Co. 15 Cal. 2d 42, 65, (1940) 98 P.2d 497; Rogers v. Warden, 20 Cal. 2d 286, 289 (1942); Dyke v. Zaiser, 80 Cal. App. 2d 639, 652 (1947); Sime v. Malouf, 95 Cal. App. 2d 82, 101 (1949); Wice v. Schilling, 124 Cal. App. 2d 735, 746 (1954); Milmoe v. Dixon, 101 Cal. App. 2d 257, 260 (1950); Gillespie v. Ormsby, 126 Cal. App. 2d 513, 527 (1954); De Spirito v. Andrews, 151 Cal. App. 2d 126, 130 (1957); Sanfran Co. v. Rees Blow Pipe Mfg. Co., 168 Cal. App. 2d 191, 202 (1959); McCue v. Bruce Enterprises, 228 Cal. App. 2d 21, 27 (1964)). Although one may be under no affirmative duty to speak, "if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but

also not to suppress or conceal any facts within his knowledge which materially qualify those stated." Rogers, 20 Cal. 2d at 289. "If he speaks at all, he must make a full and fair disclosure." Id.

Here, Mr. Carroll provided Mr. Jadallah with a set of plans and committed to a schedule and a budget in order to induce him to advance funds to Redland. By doing so, Mr. Carroll assumed a duty to disclose information that might materially alter those representations or render them misleading.

The Court finds that Mr. Carroll had a duty to disclose the facts that he had failed to pay subcontractors, that the Project was no longer within budget, and that the original plans had changed. Each of these facts were material to the parties' arrangement. To be actionable, however, the Court must still find that Mr. Carroll had knowledge of the facts he failed to disclose. Mr. Carroll testified at trial that he knew in March 2013 that he could not complete the Project within the $700,000 budget. He also testified that, by March 2, 2013, he had paid Mr. O'Briain in full for work related to the original plans. At that time, however, he still owed Mr. O'Briain outstanding payments arising only from the modified plans. The Court therefore concludes that Mr. Carroll knew of these facts when requesting the March 7, May 14, and May 28 advances. When requesting those advances, Mr. Carroll should have, but did not, disclose these material facts to Mr. Jadallah. Thus, nondisclosure of these facts may form the basis for nondischargeability of the March 7, May 14, and May 28 advances.

The Court cannot conclude that the January 23 or January 29 advances are likewise nondischargeable based on Mr. Carroll's failure to disclose material facts, because the Court received no evidence that Mr. Carroll had changed the plans, was late on payments to subcontractors, or knew that the project was over budget when he requested the January 23 and January 29 advances. Further, Mr. Jadallah became aware that these facts might exist on June 19, prior to making the August 9 advances. Accordingly, the Court cannot find the August 9 advances nondischargeable due to Mr. Carroll's failure to disclose material facts.

It is not enough that Mr. Carroll failed to disclose facts material to the March 7, May 14, and May 28 advances; he must have done so with an intent to deceive Mr. Jadallah. The Court can reasonably infer that Mr. Carroll did not disclose these facts because he feared that Mr. Jadallah would not have made any further advances for the Project. Mr. Jadallah has established that Mr. Carroll did not pay subcontractors, knew that the Project could not be completed within budget, and made no effort to disclose this material information. Mr. Carroll provided no credible evidence to otherwise excuse his nondisclosure. The Court can and does infer from these facts that Mr. Carroll's nondisclosure was done with the intent to deceive Mr. Jadallah.

**3. Statements of material fact made at the June 2013 meeting**

Finally, the Court finds that Mr. Jadallah has established by a preponderance of the evidence that, at the parties' June 2013 meeting, Mr. Carroll represented that parts had been ordered, that contractors had been paid, and that the remaining

$100,000 would be sufficient to complete work on the Project, despite his prior statements to the contrary. Mr. Jadallah has also established that Mr. Carroll knew these statements were false at the time they were made because there were unpaid subcontractors and the remaining advances would not be sufficient to complete the Project.[7]

The Court also finds that Mr. Jadallah has met his burden of establishing Mr. Carroll's intent to defraud. No other explanation exists for Mr. Carroll's making these statements other than to induce Mr. Jadallah to advance the funds. Mr. Jadallah has established that Mr. Carroll did not resume work on the Property and did not complete the Project on time. The Court can and does infer from these facts that Mr. Carroll intentionally misled Mr. Jadallah in order to secure the final advances. These intentional misrepresentations may form the basis for the nondischargeability of the August 9 advances.

Having found intentional misrepresentations and omissions related to the March 7, May 14, May 28, and August 9 advances, the Court has little trouble finding that Mr. Jadallah has met his burden of establishing the remaining elements of nondischargeability under section 523(a)(2)(A): justifiable reliance, causation, and damages. Mr. Jadallah must prove justifiable reliance. Justifiable reliance is a standard that falls between actual reliance, in which a plaintiff must prove that he actually relied, and reasonable reliance, in which a plaintiff must prove that the reasonable person would have

---

[7] While Mr. Carroll testified that he did not make these representations, the Court does not find his testimony on this point credible.

relied. <u>Field v. Mans</u>, 516 U.S. 59, 76 (1995). The Ninth Circuit has explained justifiable reliance as follows:

> The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on preposterous representations or close his eyes to avoid discovery of the truth.

<u>Eashai</u>, 87 F.3d at 1090-91 (quotations omitted).

Mr. Jadallah has established that he justifiably relied upon Mr. Carroll's misstatements and lack of disclosure. In regards to the omissions, the Court has already concluded that neither Mr. Jadallah nor Mr. Desmond possessed the actual facts, and that their falsity was not obvious to them. Similarly, the Court finds nothing obviously preposterous about the representations made by Mr. Carroll. Mr. Jadallah reasonably could have, and actually did, rely on Mr. Carroll's misstatements and omissions in making the advances.

Mr. Jadallah has also established causation and damages. Per the parties' arrangement, the advances were contingent upon the status of the Project. Mr. Jadallah would not have made the advances had he not been led to believe the Project could be completed timely, that payments to subcontractors were current, and that the plans were as originally detailed. But for these misrepresentations and omissions, Mr. Jadallah would not have been harmed. Mr. Jadallah was in fact harmed by

making but not recovering the March 7, May 14, May 28, and August 9 advances to Redland.

Accordingly, Mr. Jadallah has met his burden of establishing all of the elements necessary to render his liability for fraud related to the March 7, May 14, May 28, and August 9 advances nondischargeable under section 523(a)(2)(A).

### c. Nondischargeability under section 523(a)(6)

Section 523(a)(6) provides that a discharge under section 727 does not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The willful requirement is separate and distinct from the malicious requirement. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008). The injury itself must be deliberate or intentional and not merely a deliberate or intentional act that leads to injury. Kawaauhau v. Geiger, 523 U.S. 57, 61-62 (1998). The Ninth Circuit thus applies a two-pronged test that requires a plaintiff to prove that the defendant's conduct in causing the injuries was (1) willful and (2) malicious. Carillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002).

To meet the willful requirement, a plaintiff must demonstrate that "the debtor has a subjective motive to inflict injury or [] the debtor believes that injury is substantially certain to result from his own conduct." Id. at 1142. The defendant must have intended the consequence of the act, not just the act itself. Id. at 1146-47. To meet the malicious requirement, a plaintiff must demonstrate that the injury

involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Id. at 1146-47.

Here, Mr. Jadallah has failed to establish that Mr. Carroll willfully injured him. Mr. Jadallah's evidence circumstantially establishes that Mr. Carroll intended to deceive. This evidence does not, however, establish that Mr. Carroll actually intended for Mr. Jadallah never to be repaid for the advances he made to Redland. If anything, the misrepresentations and omissions were made so that Mr. Carroll could continue working on the Project, the logical end result of that conduct being the completion of the Project, the sale of the Property, and the repayment of the loan. Accordingly, Mr. Jadallah has failed to meet his burden of establishing nondischargeability under section 523(a)(6).

## V. CONCLUSION

Based upon the above findings of fact and conclusions of law, the Court holds that Mr. Jadallah has met his burden of establishing that Mr. Carroll's liability for fraud related to the March 7, May 14, May 28, and August 9 advances is nondischargeable under section 523(a)(2)(A). Mr. Jadallah has failed to establish nondischargeability in relation to the January 22 and January 29 advances under section 523(a)(2)(A), and has failed to establish nondischargeability as to any of the advances under section 523(a)(6). Accordingly, the Court will enter judgment in favor of Mr. Jadallah consistent with this memorandum decision.

**\*\*END OF MEMORANDUM DECISION\*\***

## Court Service List

[None]